UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

B.C., by and through his legal guardian,
TAMMY CLARK,

    Plaintiff,

                File No.  5:04-CV-155

v.

                HON. ROBERT HOLMES BELL

DR. SHARON BANKS, in her official
capacity as Superintendent of Lansing
School District, WILLIAM DeFRANCE,
in his official capacity as Superintendent
of Eaton Rapids Public Schools,
JENNIFER GRANHOLM, in her official
capacity as Governor of the State of Michigan,
and THOMAS D. WATKINS, JR., in his
official capacity as Superintendent of Public
Instruction, Michigan Department of Education,

    Defendants.

_____/

# O P I N I O N

   This case presents the issue of whether the decision by the Michigan Legislature to

require school districts to enter into a written agreement regarding the costs of special

education prior to permitting a student to attend a public school of their choice violates the

Equal Protection Clause of the Fourteenth Amendment of the United States Constitution,

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, Title II of the Americans

with Disabilities Act, 42 U.S.C. § 12132 et seq., and the Persons with Disabilities Civil

Rights Act, MICH. COMP. LAWS § 37.1102.  The parties have each filed a motion for

summary judgment on this issue.  Before the Court is: 1) Defendant Dr. Sharon Banks ("Banks") motion to dismiss or, alternatively for summary judgment,  2) Defendant William DeFrance's ("DeFrance") motion for summary judgment, 3) Defendant Jennifer Granholm and Thomas D. Watkins, Jr. (collectively "the State") motion for summary judgment, and 4) cross-motions for summary judgment against the State and DeFrance by Plaintiff B.C.  For the reasons stated below, the Court will grant each Defendants' motion for summary judgment and deny B.C.'s cross motions.  Accordingly, the case is dismissed in its entirety.

I.

*Statutory Background*

In order to properly understand the issues presented in this case, it is necessary to review how the state of Michigan operates and funds their public school system.  The public school system in Michigan is administered through fifty-seven intermediate school districts ("ISDs").  *See* MICH. COMP. LAWS § 380.601--628; List of Michigan Intermediate School Districts, *available at* http://www.michigan.gov/mde (last visited July 29, 2005).  Among the duties placed upon the ISD, it must develop a plan for special education coordinating the programs and services operated or contracted for by the member school districts.  MICH. COMP. LAWS § 380.1711(1)(a). Each school district is a member of an ISD.  This case involves the Lansing school district, a member of the Ingham ISD, and the Eaton Rapids school district, a member of the Eaton ISD.

Ten years ago, through the passage of an amendment to the state constitution, Michigan voters fundamentally altered the manner in which school districts are funded. *See* MICH. CONST. of 1963 art. 9, § 11 ("Proposal A").  Prior to Proposal A, the majority of a school district's revenue came from local property taxes.  Proposal A vastly changed this system.  Currently, each school district receives funding directly from the state based on a per membership per pupil foundation allowance ("foundation allowance") as defined in MICH. COMP. LAWS § 388.1620.  The amount of the foundation allowance for each school district is determined through a weighted formula based upon the number of students who are enrolled and in regular attendance in the school district on two pupil membership count days.  MICH. COMP. LAWS § 388.1606(4), (8).

In addition to the foundation allowance, the state reimburses school districts and ISDs for 28.6138% of their total approved costs of special education and 70.4165% of total approved costs of special education transportation.  MICH. COMP. LAWS § 388.1651a(2).  ISDs also annually receive additional aid from the state to "be used to comply with requirements of this act and the revised school code . . . and for which funding is not provided elsewhere in this act, and to provide technical assistance to districts . . . ." MICH. COMP. LAWS § 388.1681(1).  ISDs and school districts also receive federal funding for special education pursuant to the Individuals with Disabilities Education Act (IDEA).

In addition to the funding from the state, ISDs are also statutorily authorized to, with voter approval, levy ad valorem property taxes for operational costs, and costs of special and

3

vocational education programs.  *See* MICH. COMP. LAWS §§ 380.625a (ISD "may levy ad valorem property taxes for operating purposes at a rate not to exceed 1.5 times the number of mills allocated to the [ISD] for those purposes in 1993."); 380.1724a (special education millage); 380.681 (vocational education millage).

Since 1881, the Michigan legislature has statutorily provided every child with a right to attend public school.  *See* P.A. 1881, No. 164, c. 3, § 18.  "A person, resident of a school district not maintaining a kindergarten and at least 5 years of age on the first day of enrollment of the school year, shall have a right to attend school in the district."  MICH. COMP. LAWS § 380.1147(1).  This provision grants each child a right to attend school in their district of residence.  Michigan, following a recent trend throughout the country, has also enacted a mechanism through which students may attend a school in a district other than their district of residence.  Such provisions are commonly referred to as "school of choice" laws.

The Michigan "school of choice" system is a voluntary program in which each school district determines whether or not it will accept nonresident applicants for enrollment.  Two provisions govern the procedure by which a school district may enroll students from outside the district.  The first, M.C.L. § 388.1705, is applicable when a school district decides to accept applications for enrollment from nonresident students who reside in a district within the same ISD.  The second, M.C.L. § 388.1705c, applies when a school district determines that it will accept applications for enrollment from nonresident students who reside in a district located in a contiguous ISD.  A hypothetical example illustrates the applicability of

the two statutes.  Student A resides in the Lansing school district.  If he wished to attend the Williamston Public Schools, § 388.1705 would apply because the Lansing and Williamston school districts are both part of the Ingham ISD.  If, as is the case here, he wished to attend Eaton Rapids Public Schools, § 388.1705c would apply because Eaton Rapids is part of the Eaton ISD, a contiguous ISD to Ingham.

The procedures for accepting and enrolling nonresident students are largely the same under both statutes.  As mentioned previously, the decision to enroll nonresident students is left to each school district.  If a school district chooses to accept applications from nonresidents it must follow the procedures outlined in the applicable statute.  MICH. COMP. LAWS §§ 388.1705(2); 388.1705c(2).  After choosing to accept nonresident applicants, there is very little discretion left to a school district in selecting or denying enrollment.  Both statutes expressly prohibit a school district from granting or refusing enrollment "based on intellectual, academic, artistic, or other ability, talent, or accomplishment, or lack thereof, or based on a mental or physical disability."  MICH. COMP. LAWS §§ 388.1705(6); 388.1705c(6).  Further, a school district cannot grant or deny enrollment "based upon religion, race, color, national origin, sex, height, weight, marital status, or athletic ability, or, generally, in violation of state or federal law prohibiting discrimination."  *Id.* §§ 388.1705(8); 388.1705c(8).

Both statutes also provide that if the number of qualified nonresident applicants does not exceed the number of available positions in the school, grade, or program, "the school

district shall accept for enrollment all of the qualified nonresident applicants eligible for acceptance." *Id.* §§ 388.1705(13); 388.1705c(13).  If, however, the number of qualified nonresident applicants exceeds the available positions in the grade, school, or program, "the district shall use a random draw system" to fill the available positions.  *Id.*

Although the two school of choice statutes are nearly identical, they differ in one key aspect which is at the heart of this case.  Section 388.1705c(18) provides:

> In order for a district or intermediate district to enroll pursuant to this section a nonresident pupil who resides in a district located in a contiguous intermediate district and who is eligible for special education programs and services according to statute or rule, or who is a child with disabilities, as defined under the Individuals With Disabilities Education Act, title VI of Public Law 91-230, the enrolling district shall have a written agreement with the resident district of the pupil for the purpose of providing the pupil with a free appropriate public education.  The written agreement shall include, but is not limited to, an agreement on the responsibility for the payment of the added costs of special education programs and services for the pupil.

MICH. COMP. LAWS § 388.1705c(18).  A written agreement is not required to enroll a general education student under § 388.1705c.  Section 388.1705 also does not require such a written agreement prior to enrolling a nonresident student who needs special education services.[1] In this case, Plaintiff contends the written agreement requirement in § 388.1705c(18) violates the Equal Protection Clause of the Fourteenth Amendment, Section 504 of the Rehabilitation

---

[1] Section 388.1705(22) is the only subsection where nonresident students eligible for special education programs are specifically addressed.  Subsection twenty-two provides that a district that enrolls such a student is considered the resident district of that student "for the purpose of providing the pupil with a free appropriate public education." In addition, the enrolling district is responsible for the development and implementation of an individualized education plan for the nonresident student.  MICH. COMP. LAWS § 388.1705(22).

6

Act of 1973, Title II of the Americans with Disabilities Act, and the Michigan Persons with Disabilities Civil Rights Act.

*Factual Background*

With this background, the Court now turns to the specific facts underlying Plaintiff's claim. Plaintiff is a six-year old child who resides with his mother, Tammy Clark, in Lansing, Michigan. Plaintiff has developmental disabilities entitling him to special education services. Ms. Clark has been employed in the Eaton Rapids area for the past seven years and B.C. attends day care in that area. Rather than relocate to Eaton Rapids, Ms. Clark sought to enroll Plaintiff in kindergarten in the Eaton Rapids school district under the applicable school of choice provision. The Eaton Rapids school district is located in the Eaton ISD, contiguous to the Ingham ISD, where the Lansing school district is located. Accordingly, § 388.1705c is the relevant provision.

Ms. Clark initially applied for enrollment for her son in the Eaton Rapids school district in November 2003. *See* Exhibit 1, Plaintiff's Second Amend. Compl. (Docket #38). At the time, Eaton Rapids Public Schools was accepting applications from nonresident students from contiguous ISDs for the 2004-05 school year. In a letter dated December 15, 2003, James Ewing, Special Services Director for Eaton Rapids Public Schools, informed Ms. Clark that Plaintiff would not be recommended for enrollment, citing the written agreement requirement in § 388.1705c(18) and discussions with Jonathan Schelke, Director of Special Education for Lansing Public Schools, in which Schelke said that the Lansing School District would be able to provide a special education program for Plaintiff. *Id.*

Ms. Clark renewed Plaintiff's application for enrollment in June 2004. Eaton Rapids Public Schools agreed to accept Plaintiff for enrollment contingent upon an agreement between the Eaton Rapids and Lansing school districts regarding the added costs for Plaintiff's special education services pursuant to § 388.1705c(18). Exhibit 1, William DeFrance Affidavit ¶ 4, DeFrance Mot. Summ. J. (Docket #55). Thereafter, on July 1, 2004, Eaton Rapids Public Schools submitted a proposed agreement to the Lansing School District. The proposed agreement required the Lansing School District to release its $6,700 foundation allowance for Plaintiff to Eaton Rapids Public Schools. Exhibit 2, Contract for Services Agreement, Banks' Mot. Summ. J. (Docket #26). In addition, the agreement also required the Lansing School District to reimburse Eaton Rapids Public Schools for "any agreed upon costs unique to the student." *Id*. The contract calculated the approximate cost to educate Plaintiff in the Eaton Rapids school district as $25,007 and requested that the Lansing School District pay $18,307 to Eaton Rapids ($25,007 less the $6,700 foundation allowance). *Id*.

In a letter dated August 16, 2004, the Lansing School District rejected the proposed agreement. Exhibit 4, Aug. 16, 2004 Letter, Banks' Mot. Summ. J. (Docket #26). Lansing did, however, express its willingness to enter into an agreement which only released the $6,700 foundation allowance to Eaton Rapids Public Schools. *Id*. The letter also set forth the Lansing School District's position on reimbursement of the additional costs for a special education program. "[T]he district is not willing to pay the additional cost for a special education program that is already available in the Lansing School District." *Id*.

On September 16, 2004, Eaton Rapids Public Schools submitted a revised proposed agreement for Plaintiff's special education costs. Exhibit 5, Agreement for Services, Banks' Mot. Summ. J. (Docket #26). This version of the agreement again required the Lansing School District to release the $6,700 foundation allowance and to reimburse Eaton Rapids for certain additional costs. *Id*. This version, however, calculated the additional costs as $10,300, $8,007 less than the previous proposed contract. *Id*. The Lansing School District also rejected this proposal. "We continue to believe that the Lansing School District should commit to funding programs in the district for our residents. The $10,330 [sic] plus transportation costs are not reasonable for our district to absorb." Exhibit 6, Sept. 22, 2004 Letter, Banks' Mot. Summ. J. (Docket #26). To date, the Lansing and Eaton Rapids school districts have been unable to agree on the allocation of the costs of Plaintiff's special education services. Thus, by operation of § 388.1705c(18), Plaintiff has been unable to enroll in the Eaton Rapids school district.

Thereafter, Plaintiff filed the present suit. In his complaint, Plaintiff seeks an injunction that would allow him immediate enrollment in the Eaton Rapids school district. Further, Plaintiff requests a declaratory judgment that Banks and DeFrance, in their official capacities as superintendent of the Lansing School District and Eaton Rapids Public Schools, respectively, violated his rights under the Equal Protection Clause of the United States Constitution, Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act, and the state law Persons with Disabilities Civil Rights Act. The heart of

Plaintiff's prayer for relief, however, is his request for a declaration that the State has violated the rights set forth above by enacting and enforcing § 388.1705c(18). Essentially, Plaintiff requests that the Court strike § 388.1705c(18) from the "school of choice" statute. Finally, Plaintiff also seeks monetary damages for loss of educational services and compensation for the alleged discrimination he has suffered. Before the Court are Defendants' motions for dismissal under FED. R. CIV. P. 12(b)(6) or summary judgment and Plaintiff's cross-motion for summary judgment against DeFrance and the State.[2]

## II.

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005); *Layne v. Bank One, Ky, N.A.*, 395 F.3d 271, 275 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Tucker v. Union of Needletrades, Indus. and Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The burden is on the moving party to show that there is an absence of evidence supporting the nonmoving party's claim such that

---

[2]Because the Court has considered matters outside the pleadings and Defendants have had adequate notice and opportunity to conduct relevant discovery, the Court will treat the motions as summary judgment motions under FED. R. CIV. P. 56. *See* FED. R. CIV. P. 12(b); *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998).

no genuine issue of material fact exists for trial. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Minadeo v. ICI Paints*, 398 F.3d 751, 756 (6th Cir. 2005). Once the movant has shown that "there is an absence of evidence to support the nonmoving party's case," the non-moving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp.*, 477 U.S. at 323. A non-movant may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *Daniel v. Cantrell*, 375 F.3d 377, 381 (6th Cir. 2004). A "mere scintilla of evidence," however, is insufficient to create a triable issue of fact. *Humenny v. Genex Corp.*, 390 F.3d 901, 904 (6th Cir. 2004).

Where the party with the burden of proof seeks summary judgment, the Sixth Circuit has explained that there is "a substantially higher hurdle" to overcome on summary judgment. *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (quoting *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). The moving party's initial summary judgment burden is higher, "in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id.* (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)). Thus, "[s]ummary judgment in favor of the party with the burden of persuasion, however, is inappropriate when the evidence is susceptible of

different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

III.

A.    Exhaustion of Administrative Remedies under the IDEA

Banks and DeFrance first argue that Plaintiff's claim should be dismissed for failure to exhaust administrative remedies under the IDEA.  20 U.S.C. § 1415(l) (requiring exhaustion of remedies where civil action is brought under the Constitution, ADA, or title V of the Rehabilitation Act of 1973 if the relief sought is also available under the IDEA). The Court rejects this argument because Plaintiff's claims do not implicate the remedies available under the IDEA, thus exhaustion would be futile and is not required.  The gravamen of Plaintiff's complaint is that the "school of choice" system selected by the Michigan Legislature violates both federal and state law, as well as the Constitution of the United States.  In order for Plaintiff to prevail on his claim, the Court would have to conclude that the statute was invalid.  The parties have not provided and the Court has not found any authority holding that the remedy of invalidation of a state statute is available under the IDEA. Consequently, exhaustion of administrative remedies under the IDEA would be futile and is not required.  *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000).

B.    Equal Protection Claim

Turning to the merits of Plaintiff's claim, because § 388.1705c(18) specifically requires that a written agreement between the resident school district and enrolling school

12

district be in place before a special education student can be enrolled in a school district in a contiguous ISD, the only way Plaintiff can prevail is if the Court invalidates the statute. Plaintiff first attacks the statute based upon an alleged denial of equal protection in violation of the Fourteenth Amendment to the United States Constitution.

The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710 (6th Cir. 2005) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923)). The Equal Protection Clause requires that "all persons similarly circumstanced [] be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)).

The parties agree that the Court must apply the rational basis level of scrutiny to its review of § 388.1705c(18). Plaintiff has not alleged that he is part of a suspect or quasi-suspect classification necessitating strict scrutiny. *See City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 442 (1985) (holding that mental disability is not a quasi-suspect classification requiring a heightened level of scrutiny). Nor has Plaintiff alleged the violation of a fundamental right which would also trigger heightened scrutiny. *See San Antonio Indep.*

13

*Sch. Dist. v. Rodriguez*, 411 U.S. 1, 37-38 (1973) (holding that education is not a fundamental right for purposes of equal protection review).  Accordingly, rational basis is the appropriate standard of review.  *G.D. Searle & Co. v. Cohn*, 455 U.S. 404, 408 (1982) ("In the absence of a classification that is inherently invidious or that impinges upon fundamental rights, a state statute is to be upheld against equal protection attack if it is rationally related to the achievement of legitimate government ends.").

Under rational basis review, the statute is given "a strong presumption of validity and must be upheld as long as 'there is a rational relationship between the disparity of treatment and some legitimate government purpose.'" *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).  Plaintiff faces a difficult burden under rational basis review and must "negate all possible rational justifications for the distinction." *Midkiff v. Adams County Reg. Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005) (quoting *Gean v. Hattaway*, 330 F.3d 758, 771 (6th Cir. 2003)).  Conversely, a state is not obligated "to produce evidence to sustain the rationality of a statutory classification." *Heller*, 509 U.S. at 320.  "[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993).  The Court must uphold the statute "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Walker v. Bain*, 257 F.3d 660, 668 (6th Cir. 2001) (quoting *Heller*, 509 U.S. at 319-20).

Defendants argue that § 388.1705c(18) is not an unconstitutional violation of the Equal Protection Clause. First, Defendants contend that Plaintiff has failed to allege that the statute differentiates between similarly situated persons. *City of Cleburne*, 473 U.S. at 439 ("[The Equal Protection Clause] is essentially a direction that all persons similarly situated should be treated alike."). Plaintiff contends that he is being treated differently than a general education student seeking enrollment in a school district in a contiguous ISD because § 388.1705c(18) requires that a written agreement be in place prior to enrolling a special education student only.[3] No such agreement is required prior to enrollment of a general education student. Clearly, the statute makes a distinction between general education students and special education students. This distinction, however, only implicates the Equal Protection Clause if the students are similarly situated. *Hadix*, 230 F.3d at 843. They are not.

By both federal and state statute, a school district must provide a disabled student with a free appropriate public education, pursuant to an individualized educational program

---

[3]In his briefs Plaintiff frequently mischaracterizes the written agreement requirement in § 388.1705c(18) as a "reference" or "suggestion." It is neither. Clearly, § 388.1705c(18) is a *requirement* or *prerequisite* to enrollment of a special education student in a school district in a contiguous ISD. *See* MICH. COMP. LAWS § 388.1705c(18) ("*In order for a district or intermediate district to enroll* pursuant to this section a nonresident pupil . . . who is eligible for special education programs . . . the enrolling district *shall have a written agreement* with the resident district . . . .") (emphasis added). Moreover, Plaintiff repeatedly refers to his "right" to attend his school of choice. No such right exists. Michigan law provides every child with a right to attend school in their district of residence. *See* MICH. COMP. LAWS § 380.1147(1). The "school of choice" provisions merely reflect a decision by the legislature to provide an additional option for schooling, not the extension of a right.

("IEP"), including special education services and programs tailored to the child.  20 U.S.C. §§ 1401(18)(D), 1412(1), 1414(a)(5); MICH. COMP. LAWS §§ 380.1701–380.1766.  Although Plaintiff attempts to argue otherwise, these programs and services frequently cost more than educating a general education student.  *See e.g.* Eaton ISD Modification to EISD Special Education Plan, Supp. McWilliams Aff. (Docket #108) (listing diagnostic evaluations, special programs, consultant services, and assistive devices as potential "added costs" of enrolling a special education student from a contiguous ISD); DeFrance Supp. Aff. ¶ 8 (Docket #102) (noting that, in this case, Plaintiff's current IEP requires a one-on-one aide in the classroom. "[C]ompliance with this IEP would require hiring of a new employee assigned solely to B.C., resulting in an additional $20,000 in expenditures by the Eaton Rapids Public Schools.").  Such programs and services are not required for a general education student.  Therefore, because school districts are obligated by federal and state mandate to provide special programs and services to disabled students, which often increase the cost of educating the student, they are not similarly situated to general education students.[4]  Accordingly, this classification does not implicate the Equal Protection Clause. *City of Cleburne*, 473 U.S. at 439.

---

[4]Plaintiff's argument that general education students may also impose additional costs on a school district if they are gifted and require advanced instruction or if they require additional training in English as a second language is irrelevant.  Plaintiff has not pointed to any statute, case, or other authority that mandates that a school district offer such programs.  Special education programs, however, are mandated by both Congress and the State.

16

Even assuming that special education and general education students are similarly situated, Plaintiff has failed to carry his heavy burden of proving that there is no rational justification for the written agreement requirement in § 388.1705c(18). *Gean*, 330 F.3d at 771. A review of the statutory scheme governing ISD and school district funding demonstrates that there is a rational relationship between § 388.1705c(18) and a legitimate governmental interest. *Hadix*, 230 F.3d at 843.

Each ISD must establish a plan for the provision of special education programs and services that coordinates the programs "operated or contracted for by the constituent districts . . . ." MICH. COMP. LAWS § 380.1711(1)(a). Given that there are 57 ISDs and over 500 school districts in Michigan, it comes as no surprise that the programs and services provided, and the manner in which they are offered can vary between ISDs. *See* 2000 Mich. OAG No. 7046, 2000 WL 246612, *5 (Feb. 24, 2000). In addition, ISDs and school districts receive funding for special education programs from a variety of sources. The State reimburses school districts and ISDs for approximately 29% of total approved costs of special education and approximately 70% of special education transportation costs. MICH. COMP. LAWS § 388.1651a(2). ISDs also may choose to levy ad valorem property taxes for special education purposes. MICH. COMP. LAWS § 380.1724a(1). If an ISD levies a special education millage, they may do so at any rate "not to exceed 1.75 times the number of mills of those taxes authorized in the intermediate school district in 1993." *Id*. Because the decision whether to levy a millage and in what amount is left to each ISD, it is also unsurprising that this type of

funding can often vary among ISDs.  *See* OAG No. 7046, 2000 WL 246612, *6.  Moreover,

each ISD has the discretion to distribute the revenue from a special education millage in any

manner under their ISD plan.  *See* MICH. ADMIN. CODE R. 111(5) ("Intermediate school

districts shall submit the desired method for the distribution of funds to the intermediate

school district, its constituent local school districts, and public school academies . . . .").

Therefore, in recognition of the varying methods by which special education services

are provided in each ISD, as well as the variety in the amount and distribution of special

education funding, the Michigan Legislature reasonably required that school districts enter

into a written agreement pursuant to § 388.1705c(18), prior to enrolling a special education

student from a contiguous ISD.  In view of the statutory framework outlined above, this

decision is plainly rationally related to the goal of providing each special education student

with the required free appropriate public education while ensuring that school districts are

properly funded to accomplish this task.

In addition to recognizing the potential variance between each ISD's special education

programs and funding, § 388.1705c(18) also acknowledges the fact that federal and state law

require that each special education student have an IEP which addresses their specific needs

and provides them with a free appropriate public education.  20 U.S.C. §§ 1401(18)(D),

1412(1), 1414(a)(5); MICH. COMP. LAWS §§ 380.1701–380.1766.  By its terms, the required

programs and services specified in an IEP will vary based upon the individual needs of the

disabled student.  Therefore, the legislature determined that the school districts must agree,

on a case-by-case basis, on the allocation of costs to educate a special education student, pursuant to his or her IEP, who wishes to attend school in a contiguous ISD. The Court cannot say that such a decision is unreasonable.

Finally, a comparison of the two "school of choice" statutes reinforces the conclusion that § 388.1705c(18) is constitutional. As stated previously, § 388.1705 applies when a general or special education student seeks to enroll in a school district, other than his resident district, within the same ISD. MICH. COMP. LAWS § 388.1705(2). The enrolling school district and resident school district are not required to enter into a written agreement prior to enrolling a special education student under this statute. Defendants correctly note that requiring a written agreement under § 388.1705c, while not requiring such an agreement under § 388.1705, is rational because enrollment of a special education student from a contiguous ISD implicates the issues regarding funding and the varying methods of providing special education services that arise between ISDs. These issues do not arise when a special education student seeks to enroll in another school district within his/her ISD of residence. Thus, it is reasonable to conclude that the written agreement requirement is triggered by the special education student's residence, not his or her disability.

Based upon the varying programs and services offered by each school district, the varying methods of funding and allocation, the federal and state requirement of special education pursuant to an IEP, and the contrasting approach under § 388.1705, the Court must conclude that § 388.1705c(18) is rationally related to the legitimate governmental purpose

of providing each special education student with a free appropriate public education while ensuring that school districts are properly funded to accomplish this task.  Therefore, the statute passes rational basis review and is not unconstitutional.

In asserting that § 388.1705c(18) lacks a rational basis, Plaintiff's principal argument is that much of the state and federal funding provided to school districts for special education is based upon the enrollment of a student in a particular district.  Therefore, Plaintiff reasons that special education funding will follow the student, rendering an agreement on costs of special education unnecessary and irrational.  In making this argument Plaintiff completely overlooks key portions of the statutory scheme establishing the distribution of the foundation allowance and federal special education funds.  A review of the applicable law reinforces the conclusion that § 388.1705c(18) is constitutional.

Plaintiff first argues that the foundation allowance will follow a student from the district of residence to the enrolling district because the funding is based upon the number of students enrolled and in regular attendance in the district on the two pupil membership count days during the school year.  *See* MICH. COMP. LAWS § 388.1606(4).  This is partially correct.  The amount of the foundation allowance is based upon the number of students enrolled and in regular attendance in the school district on the membership count days.  *Id.* Plaintiff, however, overlooks the weighted formula used to determine the amount of the foundation allowance.  Membership in a school district is determined by computing the sum of the product of .75 times the number of full-time students enrolled on the count day for the

current school year, plus the product of .25 times the student count from the supplemental count day of the *immediately preceding school year. Id.* Thus, as the State explains in their brief, a student entering a new district only generates a .75 membership in that district and the district from which the student transferred still receives .25 membership based on the supplemental count of the previous school year. *See* State's Brief Acc. Aff. at 3-4 (Docket #98). Put another way, a portion of the foundation allowance lags behind a student who transfers to another school district. Accordingly, the premise of Plaintiff's argument regarding the irrationality of § 388.1705c(18) is erroneous.

Plaintiff also argues that § 388.1705c(18) is irrational because it assumes that the resident district receives a certain amount of money for special education services that is based on the student's residency and which would not follow the student to the enrolling district. Plaintiff contends that this assumption is incorrect. The State, however, has provided the affidavit of John Andrejack, supervisor in the Michigan Department of Education, Office of Special Education & Early Interventions Services, Finance Management Unit, refuting Plaintiff's claim. Andrejack Aff. (Docket #98). Mr. Andrejack explained that federal funding received by the state under Part B of the IDEA is given to ISDs in three components, none of which would immediately transfer from a student's district of residence to their school of choice. Andrejack Aff. ¶ 3-5.

The first portion of federal funding is based on the number of special education students attending school in the ISD in 1998. *Id.* at ¶ 3. Each ISD receives approximately

$519 per special education student counted in the district in 1998. *Id*. The remaining federal money is then apportioned in two ways. Eighty-five percent is given to ISDs based on the total number of enrolled students in both public and non-public schools in the ISD in the previous school year. *Id*. at ¶ 4. The remaining fifteen percent is then apportioned based upon the number of students in each ISD who qualify for the free school lunch program. *Id*. at ¶ 5. This count is also based upon the previous school year's data. *Id*. "Therefore, a student who transfers to a new ISD is counted in the previous ISD's membership count in the first year of attendance in a new ISD." *Id*. Thus, when a special education student transfers to a new school district, the school district of residence will continue to receive funding for that student. Plaintiff, ultimately forecloses his argument by stating, "[s]ection 18 would only be rational if the resident school continued to receive monies for special education services provided to a student attending a school of choice in another district." Plaintiff's Rep. Br. at 2 (Docket #82). Based upon the foregoing, it is clear that under the relevant statutes, the resident school district does continue to receive such funding after a student transfers to another school district. Thus, by Plaintiff's own admission, § 388.1705c(18) is rational.

Finally, Plaintiff attempts to demonstrate that the statute does not have a rational basis by citing to three other states' "school of choice" statutory schemes, as well as a review of 41 ISD plans.[5] This attempt is unavailing. First, citation to the "school of choice" statutes

_____

[5]There is some confusion as to the number of ISD plans reviewed by Plaintiff. In his brief supporting his motion for summary judgment against DeFrance, Plaintiff states that 30 ISD plans were reviewed, while the affidavit attached to the motion  identifies 32

(continued...)

of other states is completely irrelevant to the Court's analysis of § 388.1705c(18) under rational basis review. The statutes cited by Plaintiff prove nothing more than the unremarkable proposition that different legislatures can enact different solutions to solve a common problem. The Court's task, however, is not to evaluate the wisdom of a legislative choice or pass judgment on whether the statute enacted is the best way to accomplish the desired end. *See Beach Comm.*, 508 U.S. at 313 ("[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."); *Michigan Meat Ass'n v. Block*, 514 F. Supp. 560, 565 (W.D. Mich. 1981) (Gibson, J.) ("Courts will not be concerned with whether the particular legislation in question is the best or most prudent choice from among available alternatives . . . . Rather, the Court requires only that the statute enacted by Congress not be arbitrary or without a reasonable relationship to the purposes articulated.").

Second, Plaintiff's review of the various ISD plans serves only to reinforce the rationale behind § 388.1705c(18). Essentially, the review of the ISD plans reveals that the various ISDs distribute state and federal funds in a variety of ways. For example, Plaintiff

---

[5](...continued)
ISD plans. *See* Plaintiff's Br. Summ. J. at 15 (Docket #72); McWilliams Affidavit ¶ 5, Exhibit 1 (Docket #72). In his brief supporting his motion for summary judgment against the State, he refers to a review of both 20 and 30 ISD plans. *See* Plaintiff's Br. Summ. J. at 16 (Docket #73). Again, the affidavit accompanying the brief refers to 32 ISD plans. McWilliams Affidavit ¶ 5, Exhibit 9 (Docket #73). Plaintiff, however, has also submitted an additional affidavit of Mr. McWilliams detailing a review of 41 ISD plans. *See* McWilliams Affidavit ¶¶ 4, 5 (Docket #88). The Court will use the number from the latest filed affidavit.

makes much of the fact that ten of the ISDs reviewed distribute federal special education funds based upon the number of students counted in each district. McWilliams Affidavit ¶¶ 5, 6 (Docket #88). Presumably, this means that the other 31 ISDs reviewed distribute that same money in a different way. Thus, as set forth above, § 388.1705c(18) is rational because the method of distribution of funding (and the amount) may vary between each ISD. The remainder of McWilliams' affidavit serves to reinforce this proposition by further outlining the differences in distribution between ISDs in the method of distribution of state and federal special education funding. At best, the affidavit may arguably demonstrate that in certain situations the statute may appear irrational. This, however, does not satisfy Plaintiff's burden under rational basis review. *Gean*, 330 F.3d at 771 ("The plaintiffs have the burden to negate *all* possible rational justifications for the distinction."). Accordingly, because Plaintiff has not carried his burden and Defendants have shown a rational justification for the classification, the statute satisfies rational basis review. Summary judgment will be entered in favor of the State.

In light of the Court's determination that § 388.1705c(18) is valid, Plaintiff's equal protection claim against DeFrance can be disposed of quickly.[6] There is no dispute that Lansing School District and Eaton Rapids Public Schools did not reach an agreement on the allocation of the costs of Plaintiff's special education, thus by operation of § 388.1705c(18), he could not enroll in the Eaton Rapids school district. DeFrance simply followed the

_____

[6]The Court will address Plaintiff's equal protection and statutory claims against Banks below.

requirements of a valid state statute.  Accordingly, DeFrance's motion for summary judgment on Plaintiff's Equal Protection claim is granted.

C.     Plaintiff's Statutory Claims

Plaintiff also alleges that § 388.1705c(18) violates the Rehabilitation Act of 1973, Title II of the ADA, and the Michigan Persons with Disabilities Civil Rights Act.  In addition, Plaintiff contends that DeFrance and Banks violated these statutes. Both contentions are without merit and summary judgment will be entered in favor of Defendants.

The Rehabilitation Act, the ADA, and the Persons with Disabilities Civil Rights Act each require that, in order to make out a violation, plaintiff must show discrimination on the basis of their disability.  *See McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459-60 (6th Cir. 1997) ("The analysis of claims under the Americans with Disabilities Act roughly parallels those brought under the Rehabilitation Act of 1973....") (quoting *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir.1996)); 29 U.S.C. § 794 (Rehabilitation Act) ("No otherwise qualified individual with a disability . . . shall, *solely by reason of her or his disability* . . . be denied the benefits of . . . any program or activity receiving Federal financial assistance . . . .") (emphasis added); 42 U.S.C. § 12132 (ADA) ("[N]o qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services programs or activities of a public entity . . . .") (emphasis added); MICH. COMP. LAWS § 37.1102 ("The opportunity to obtain . . . full and equal utilization of public accommodations, public services, and

25

educational facilities *without discrimination because of a disability* is guaranteed by this act and is a civil right.") (emphasis added). In order to prove discrimination, Plaintiff must also show bad faith or gross misjudgment on the part of Defendants.  *M.P. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 982 (8th Cir. 2003); *Leon v. Michigan Bd. of Educ.*, 807 F. Supp. 1278, 1286 (E.D. Mich. 1992).

Plaintiff's challenge to the statute on its face fails because it does not discriminate on the basis of disability.  In fact, § 388.1705c contains two provisions expressly prohibiting school districts from granting or refusing enrollment "based on a mental or physical disability" or "in violation of any state or federal law prohibiting discrimination."  MICH. COMP. LAWS §§ 388.1705c(6), (8).  Moreover, a comparison of the two "school of choice" statutes further demonstrates that § 388.1705c(18) does not discriminate based upon disability.  As stated previously, § 388.1705c only applies where a student wishes to transfer from his school district of residence to a school district in a contiguous ISD.  Section 388.1705, on the other hand, applies where a student wishes to transfer from his school district of residence to a district within the same ISD.  A written agreement regarding the added costs of special education is only required under § 388.1705c, when a student wishes to cross ISD boundaries.  Clearly, the requirement is in place because of the special education student's residence, not because of any disability.  If Plaintiff wished to transfer to a school district within the Ingham ISD, no agreement between the school districts would be required because he resides within that ISD. Section 388.1705c(18) is only triggered because Plaintiff

wishes to transfer to an ISD outside his district of residence. Oddly enough, Plaintiff best encapsulates this distinction in his brief by stating "[t]he School of Choice section applying to students moving within one [ISD] does not require an agreement between districts. *Therefore, the agreement provision under Section 18 is tied to the student's residence in an ISD which is different than the ISD of his school of choice.*" Plaintiff's Br. Summ. J. at 13 (Docket #73) (emphasis added) (citation omitted). Plaintiff's claim that the statute violates the Rehabilitation Act, ADA, and Michigan Persons with Disabilities Act fails as a matter of law. *See also* 2000 Mich. OAG No. 7046, 2000 WL 246612, *7-8 (concluding that § 388.1705c(18) did not violate the IDEA or Rehabilitation Act of 1973). Accordingly, summary judgment is entered in favor of the State.

Moreover, Plaintiff's claim that DeFrance and Banks violated the above statutes is also without merit. With regard to DeFrance, Plaintiff argues that DeFrance's failure to enroll Plaintiff without a written agreement constitutes discrimination in violation of state and federal law. This claim is completely divorced from the applicable law and relevant facts. First, it bears repeating that by not enrolling Plaintiff, DeFrance followed the requirements of a valid state law. *See* MICH. COMP. LAWS § 388.1705c(18). Second, Plaintiff has failed to allege any discrimination, bad faith, or gross misjudgment on the part of DeFrance. *See Leon*, 807 F. Supp. at 1286. Rather, the undisputed evidence before the Court demonstrates that DeFrance did not discriminate against Plaintiff based upon his disability and did not exercise any bad faith or misjudgment by not enrolling him in the school district.

27

DeFrance submitted his own affidavit explaining "Eaton Rapids Public Schools accepts schools of choice students for whom appropriate funding is available from the resident district or the State." DeFrance Aff. ¶ 2 (Docket #55). Further, DeFrance averred that Eaton Rapids did agree to accept Plaintiff for enrollment contingent on an agreement with the resident district that would provide funding for the added costs of his education. *Id.* ¶ 4. DeFrance also explained that if Plaintiff were to become a resident of the Eaton ISD, Eaton Rapids Public Schools would provide him with a free appropriate public education. *Id*. Beyond making unsupported allegations to the contrary, Plaintiff failed to rebut this evidence. DeFrance's affidavit demonstrates that Eaton Rapids Public Schools treated Plaintiff in the same manner as any other student, general or special education, seeking enrollment in the school district. Eaton Rapids accepts students for whom appropriate funding is available. Because adequate funding was not available, Plaintiff was unable to enroll. The denial of enrollment was not based upon his disability, but rather, because of his residence in a contiguous ISD and the unavailability of funding for his education.

Moreover, Plaintiff grossly misrepresents the facts of this case by alleging "[DeFrance] fail[ed] to seriously pursue an agreement to allow Plaintiff to exercise his right to attend his school of choice . . . ." Pl.'s Br. Summ. J. at 6 (Docket #66). The undisputed facts actually demonstrate that DeFrance pursued an agreement with the Lansing School District in good faith. Over the course of a three month period, DeFrance submitted two proposals to the Lansing School District seeking an agreement on the allocation of the special

education costs for Plaintiff.  *See* Exhibit 2, July 1, 2004 Contract for Services; Exhibit 5,

September 16, 2004 Agreement for Services, Banks' Mot. Summ. J. (Docket #26).  In the

second proposed agreement, DeFrance drastically reduced the costs requested from the

Lansing school district.  *Id.*  Such an attempt at negotiating and compromise is not bad faith.

Accordingly, Plaintiff's claim against DeFrance for a violation of the Rehabilitation Act,

ADA, and Michigan Persons with Disabilities Civil Rights Act fails.  Summary judgment

will be entered in favor of DeFrance.[7]

---

[7]The Court also notes that, contrary to Plaintiff's argument, his enrollment in Eaton Rapids Public Schools would constitute a fundamental alteration in the nature of the school of choice system.  *See Jones v. City of Monroe*, 341 F.3d 474, 480 (6th Cir. 2003) ("An accommodation is not reasonable if it imposes a fundamental alteration in the nature of the program.") (citing 28 C.F.R. § 35.130)).  Leaving aside the fact that his enrollment, absent an agreement on funding for his special education services, would effectively gut the school of choice system enacted by the Michigan legislature, Eaton Rapids would be saddled with the cost of providing a free appropriate public education to Plaintiff, without adequate funding to cover the costs of the required programs.  DeFrance has demonstrated through student-teacher ratios, administrative regulations, and the economics of teacher and resource aide salaries that Plaintiff would add significant costs to the school district.  *See* DeFrance's Res. Br. Summ. J. at 13-16.  Moreover, DeFrance has also offered his supplemental affidavit noting that Plaintiff's current IEP requires a one-on-one aide that, if required the following school year, would require the hiring of a new employee, adding $20,000 in expenditures to Eaton Rapids Public Schools. DeFrance Supp. Aff. ¶ 8 (Docket #102).  Finally, under the Eaton ISD Special Education Plan, the added costs of accepting a special education student from a contiguous ISD "are to be the sole responsibility of the local district enrolling the non-resident student . . . . Costs associated with providing any and all special education services to non-resident students will be billed back to the enrolling district on an actual cost basis."  Exhibit 1, McWilliams Aff. (Docket #108).  Therefore, without an agreement with Plaintiff's resident school district,  the added costs of his special education will be borne by Eaton Rapids Public Schools, without assistance from Eaton ISD.  Faced with this record, the only conclusion is that Plaintiff's enrollment without an agreement regarding added costs of special education would be a fundamental alteration to the school of choice system.

D.      Plaintiff's Equal Protection and Statutory Claims against Banks

The Court now turns to Plaintiff's claims against Banks.  Plaintiff's claims stem from the allegation that Banks has adopted a "blanket policy" against entering into agreements for special education services under § 388.1705c(18) which discriminates against special education students.  Because the undisputed evidence demonstrates that Banks does not maintain such a policy, Plaintiff cannot state a claim of discrimination based upon constitutional or statutory grounds.  Accordingly, summary judgment will be entered in Banks' favor.

Plaintiff's claims against Banks rest solely on an alleged policy of the Lansing School District "against ever entering into an agreement regarding the special education expenses of school of choice students . . . ." Pl.'s Br. Summ. J. at 15 (Docket #67).  Plaintiff relies on the affidavit of Jonathan Schelke, Director of Special Education for the Lansing School District, to support his claim of a discriminatory policy.  Schelke Aff., Def. Br. Summ J. (Docket #26)  The Court has reviewed Mr. Schelke's affidavit and concludes that Plaintiff again has mischaracterized the undisputed facts in this case.

Mr. Schelke explained that the process the Lansing School District goes through when a general or special education student elects to enroll in a different school district, whether within the Ingham ISD or in a contiguous ISD, is substantially similar.  Schelke Aff. ¶ 3,4. The Lansing School District agrees to forego the foundation allowance for that student.  *Id*. With regard to entering into agreements under § 388.1705c(18), Schelke explained:

> The Lansing School District operates a comprehensive program of special education and related services for students with disabilities and unless it is specifically determined that the programs and services offered by the Lansing School District would be inadequate to provide the eligible student with the necessary special education and related services, Lansing does not enter into a cooperative agreement to pay for the services elsewhere.

*Id.* at ¶ 4. This is the passage which Plaintiff contends establishes the "blanket policy" against entering into agreements under § 388.1705c(18). Schelke's affidavit, however, establishes 1) the Lansing School District treats general and special education students the same under the "school of choice" statutes; and 2) the Lansing School District does not enter into agreements under § 388.1705c(18) unless it has been determined that its programs and services are inadequate for the particular special education student seeking enrollment in a contiguous ISD. This affidavit certainly does not establish a "blanket policy" against § 388.1705c(18) agreements. *See also* Exhibit 4, August 16, 2004 Letter (Docket #26) ("The Lansing School District *is willing to enter into an agreement*, which releases the foundation allowance to the Eaton Rapids district.").

Moreover, it also makes clear that the Lansing School District's decision not to enter into an agreement with Eaton Rapids Public Schools was not based upon Plaintiff's disability, but on the Lansing School District's assessment of its own programs. The Lansing School District reasonably determined that its programs could adequately address Plaintiff's special education needs.[8] This decision was not based on Plaintiff's disability, but rather on

---

[8]It appears Plaintiff does not dispute the Lansing School District's conclusion that its programs could adequately provide him with a free appropriate public education. *See* Compl. ¶ 32, 33 ("Neither Plaintiff nor his mother had any complaints about Lansing's implementation of this IEP . . . Ms. Clark mother [sic] attended a meeting at Maple Grove Elementary School in Lansing and agreed upon an IEP with representatives of Lansing School District on October 15, 2004. She has no complaints with Lansing's implementation of this IEP.").

the programs available in the Lansing and Eaton Rapids school districts.  Plaintiff did not

rebut Banks' evidence with contrary admissible evidence.  *Daniel*, 375 F.3d at 381 ("a non-

movant 'may not rest upon the mere allegations or denials of his pleading, but must set forth

specific facts showing that there is a genuine issue of material fact for trial.'") (quoting

*Anderson*, 477 U.S. at 256).  Consequently, Plaintiff cannot show that he was discriminated

against because of his disability, a necessary element of his constitutional and statutory

claims.  Accordingly, Banks' motion for summary judgment is granted.

IV.

Plaintiff's constitutional and statutory claims fail as a matter of law.  As such,

summary judgment is entered in favor of Defendants on each of Plaintiff's claims.  Section

388.1705c(18) is rationally related to a legitimate governmental interest and does not violate

the Equal Protection Clause.  Nor does the statute violate the federal and state statutes

prohibiting discrimination based upon a disability.  Moreover, Plaintiff has failed to show

a genuine issue of fact that DeFrance or Banks violated the Equal Protection Clause or

federal and state law in their treatment of Plaintiff.  Accordingly, summary judgment is

entered in favor of the State, DeFrance, and Banks and Plaintiff's cross-motions for summary

judgment against the State and DeFrance are denied.  An order consistent with this opinion

shall be entered.


Date: _____        _____
                                     ROBERT HOLMES BELL
                                     CHIEF UNITED STATES DISTRICT JUDGE